### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

              v.

NIKITA HARPER,
    Defendant.

Civil Action No.
1:04-cr-00218-SDG

### OPINION AND ORDER

This case is before the Court on Defendant Nikita Harper's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). After careful consideration and with the benefit of oral argument, the Court **GRANTS** the motion and reduces Harper's sentence to **TIME SERVED**. The Court **STAYS** execution of this Order for 14 days.

### I.    Background

Harper was tried and convicted in 2005 for committing three bank robberies, brandishing a weapon during each of those robberies (the § 924(c) convictions), and for his status as a felon in possession of a firearm.[1] Because of his extensive criminal history and the sentencing guidelines at the time, he was sentenced to 1,044 months—87 years—behind bars.[2]

---

[1]    ECF 145.

[2]    ECF 154. Harper's sentence was subsequently reduced to 43.5 years [ECF 255].

The three § 924(c) convictions ultimately accounted for 57 of Harper's 87-year sentence. At the time, the first § 924(c) count qualified as his "first conviction" under the statute, and the second and third counts (though part of the same case) triggered the "second and subsequent" provisions of § 924(c), which required the Court to impose two mandatory 25-year consecutive sentences to run after Harper completed the time imposed for his other convictions. These are referred to as "stacked" § 924(c) charges. Congress has since amended § 924(c) to prevent stacking and the lengthy mandatory sentences that resulted.

Harper moves for a sentence reduction for extraordinary and compelling reasons pursuant to § 3582(c)(1)(A)(i) and asks this Court to reduce his sentence to time served. The government opposes a reduction, arguing that, for reasons discussed below, Harper does not legally qualify. The Court disagrees and finds that Harper's sentence can and should be reduced to time served.

## II. Legal standard

Compassionate release exists for the purpose of releasing incarcerated individuals when continued imprisonment no longer serves the goals of our justice system. Section 3582(c)(1)(A)(i) of the 1984 Sentencing Reform Act codifies this process. Under this statute, a district court may reduce a prisoner's term of incarceration if "after considering the factors set forth in § 3553(a) to the extent they are applicable . . . it finds that extraordinary and compelling reasons warrant

such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." So, a court must find both that extraordinary and compelling reasons exist to reduce a sentence and that those reasons adhere to applicable policy statements; if they do, a court must then consider the § 3553(a) factors to determine an appropriate reduction amount.[3]

This process begs the question: What qualifies as an "extraordinary and compelling" reason to reduce a sentence? The terms are inherently expansive and incapable of consistent and standardized application. Recognizing the need for a descriptive definition of the terms, Congress directed the Sentencing Commission to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress placed only one limitation on the Commission's prospective definition—"rehabilitation of the defendant alone is insufficient." *Id.*

For over twenty years, and despite this Congressional directive, the Sentencing Commission did not issue any statement on compassionate release.

---

[3]   Because all three conditions must be met to reduce a sentence, the order in which a court addresses the factors is irrelevant. *United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021) ("As an initial matter, nothing on the face of 18 U.S.C. § 3582(c)(1)(A) requires a court to conduct the compassionate-release analysis in any particular order.").

Finally, in 2006, the Commission promulgated the long-awaited statement now contained in U.S.S.G. § 1B1.13. At the time, all motions for compassionate release had to be filed by the Director of the Bureau of Prisons (BOP) and thus, the policy statement contemplated only BOP-initiated motions.

Then came the First Step Act of 2018 (FSA), which permitted courts to reduce an incarcerated individual's sentence upon motion by the BOP *or* the incarcerated individual. This triggered a dilemma: whether the Commission's policy statement applied to only BOP-filed motions or both BOP and individual-filed motions. All but one circuit held that, when adjudicating a motion brought by a prisoner, a district court is not constrained by the existing policy statement because that statement was written with only motions brought by the BOP in mind. The Eleventh Circuit took a different position. *See United States v. Bryant*, 996 F.3d 1243, 1256–57 (11th Cir. 2021). In *Bryant*, this Circuit held that the existing policy statement applied to motions filed by incarcerated individuals and the BOP alike. The holding was clear—"[t]here is no question that 1B1.13 is *the* policy statement the Commission adopted to comply with [its] statutory mandate." *Id.* at 1255.

District courts (except those in this Circuit) were thus left without an applicable policy statement to apply to prisoner-initiated motions. Predictably, in the wake of the FSA's sentencing-law overhaul and absent policy guidance, a

circuit split emerged: Can courts consider *nonretroactive* changes in sentencing laws when determining whether an extraordinary and compelling reason for compassionate release exists? The First, Fourth, Ninth, and Tenth Circuits held that nonretroactive changes may be considered,[4] while the Third, Fifth, Sixth, Seventh, Eighth, and D.C. Circuits held that nonretroactive changes cannot be considered.[5] Notwithstanding *Bryant*, the Eleventh Circuit did not take an explicit position on the treatment of nonretroactive changes in law. However, it did acknowledge the growing split and note that "disparity and uncertainty" follow when district courts reject 1B1.13 as the applicable policy statement. *Bryant*, 996 F.3d at 1257.

Many of the losing compassionate release defendants petitioned for certiorari before the Supreme Court. Notably, the U.S. Department of Justice

---

[4]   *United States v. Ruvalcaba*, 26 F.4th 14, 16, 26–28 (1st Cir. 2022) (holding that non-retroactive changes in sentencing laws may be considered in light of a defendant's particular circumstances); *United States v. McCoy*, 981 F.3d 271, 286–88 (4th Cir. 2020) (same); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (same); *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (same).

[5]   *United States v. Andrews*, 12 F.4th 255, 260–62 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022) (holding that non-retroactive changes in law are not permissible considerations); *United States v. McMaryion*, 64 F.4th 257, 259–60 (5th Cir. 2023) (same); *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) (same); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (same); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022) (same); *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022) (same).

staked out a position—while it agreed with the district courts that held nonretroactive changes could not be considered as an extraordinary and compelling reason for a sentence reduction, it nonetheless urged the Supreme Court to deny cert because, "although courts of appeals have reached different conclusions on the issue, the practical importance of the disagreement is limited, and the Sentencing Commission could promulgate a new policy statement that deprives a decision by this Court of any practical significance."[6] In other words, DOJ has argued that the Commission should settle this split, not the Supreme Court. In its briefing to support this position, the government relied on *Braxton v. United States,* 500 U.S. 344 (1991), where the court noted that "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Id*. at 348. Congress contemplated this precise scenario and directed the Commission to settle any discrepancies.

And it did. The Commission addressed the split in its policy statement that went into effect on November 1, 2023, providing two relevant points of guidance.[7]

---

[6]   U.S. Mem. in Opp. to Grant of Cert., *Watford v. United States*, No. 21-551, 2021 WL 5983234 (Dec. 15, 2021).

[7]   "Subsections (b)(6) and (c) operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." U.S. Sent'g Comm'n, Amendments to the Sent'g Guidelines 5

First, it added a category of extraordinary and compelling reasons to reduce a sentence—"unusually long sentences." Under no uncertain terms, the Commission agreed "with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction"[8] under narrow circumstances when deciding whether a sentence is unusually long. *See* § 1B1(b)(6). Second, the Commission promulgated § 1B1.13(c), which governs the use of changes in the law in cases where a defendant "otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction."[9] "In those circumstances, *all* changes in law . . . may properly be considered in determining the extent of a sentencing reduction."[10]

So, at long last, district courts have an amended policy statement regarding the "extraordinary and compelling" definition under § 1B1.13, which passed Congress sans modification or disapproval. The policy statement lists six categories justifying a sentence reduction: (1) the defendant's medical circumstances, (2) advanced age, (3) family circumstances, (4) whether the

---

(2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf (last visited March 10, 2024).

[8]   *Id*. at 6.

[9]   *Id*. at 7.

[10]   *Id*.

defendant is a victim of abuse, (5) "other reasons" and (6) whether the defendant received an unusually long sentence. The unusually long sentence provision at § 1B1.13(b)(6) states:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, *a change in the law* (other than an amendment to the Guidelines Manual that has not been made retroactive) *may be considered* in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a *gross disparity* between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. (Emphasis added.)

The government now takes a very different position than the one it took only a few years ago. Today the government urges this Court to ignore the policy statement by arguing the Commission exceeded the scope of its authority in promulgating (b)(6). According to the government, this policy contravenes Congress's deliberate choices about which sentencing reforms apply retroactively and which do not. It argues that allowing courts to consider nonretroactive laws "supplants Congress's legislative role," is not reasonable in light of other statutory provisions, and conflicts with § 3582(c)(1)(A)'s plain text, context, and purpose.[11] To be sure, the government makes some compelling points. But the government's

_____

[11]   ECF 270.

arguments would be far more compelling had it not argued only a few years ago that it was *within* the Commission's authority to decide whether nonretroactive changes in law can be considered extraordinary and compelling reasons to reduce a sentence. "How can the Commission have the authority to address the question but exceed that authority by addressing the question?" *United States v. Allen*, No. 1:09-CR-320-TCB, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024).

When confronted with this contradiction at oral argument, the government responded that it did not expect the Commission to act in a manner that so far exceeded its authority. But that makes little sense.[12] The question that the government previously argued was firmly within the Commission's authority to answer was a binary one—nonretroactive changes in law either could or could not be considered. Those were the two potential outcomes. The Commission adopting one of those two positions is not outside the scope of the authority that the government said it had. In fact, in its brief opposing cert review by the Supreme Court, it went so far as to acknowledge that "[n]obody disputes . . . that the Commission has the power--indeed, the statutory duty--to . . . resolve this particular issue." Brief for the United States in Opposition to Grant of Certiorari,

---

[12] To be clear the Court does not fault the Assistant U.S. Attorney for making this argument. He dutifully represented the government and tried as best as he could to defend the U.S. Department of Justice's inconsistent position.

*Jarvis v. United States*, 2021 WL 5864543, at *17 (6th Cir. June 3, 2021). The simplest explanation for the contradiction, then, is that the government just disagrees with the Commission's policy choice.

Additionally, while the government's substantive argument is not wholly lacking in merit, the Court is not persuaded. In *Bryant*, the Eleventh Circuit addressed an alleged conflict between the FSA and Commission guidelines. It stated that, where the Commission guidelines and the statute are mutually exclusive and "cannot possibly coexist," then the statute trumps the policy statement. *Bryant*, 996 F.3d at 1263. Here, the policy statement and statute exist easily in tandem. There is "no inherent incompatibility" between Congress's decision to not make a sentencing law retroactive and the Commission's policy giving judges the discretion to consider a change in law as part of a narrow sentencing provision available to only a select set of defendants. *Id*.

Finally, and maybe most importantly, if Congress viewed (b)(6) as an end-run around its legislative choices regarding retroactivity, it had the opportunity to modify or reject the policy before it went into effect. It did not. "[W]hen interpreting statutes, what Congress chose not to change can be as important as what it chose to change." *Bryant*, 996 F.3d at 1258. Even today, Congress has the opportunity to close this purported retroactivity loophole should it wish. In other words, Congress can do its job. But unless and until that day comes, the Court will

follow the Eleventh Circuit's binding directive—defer to the Commission in "defining the universe of 'extraordinary and compelling circumstances' that can justify a reduction." *Id.* at 1255. In the government's own words, "[t]he First Step Act did not . . . release district courts from their statutory obligation to adhere to [the Commission's] description [of extraordinary and compelling]." *Jarvis v. United States*, 2021 WL 5864543, at *17. Here, that means considering nonretroactive changes in law.

In taking this position, undersigned is in good company. In *United States v. Allen*, Chief Judge Timothy C. Batten, Sr. of this District addressed the identical legal issue before undersigned today and held that, "[b]ecause the Eleventh Circuit has never held that nonretroactive changes cannot be extraordinary and compelling reasons, this Court can accept 1B1.13(b)(6)'s validity and applicability. To hold that courts cannot consider nonretroactive changes to sentencing laws as extraordinary or compelling reasons would require courts to ignore the policy statement that Congress explicitly directed the Commission to create." No. 1:09-CR-320-TCB, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024). And, just last week in

*United States v. Ware*, U.S. District Judge Steve C. Jones of this District also agreed. No. 1:97-CR-00009-SCJ, 2024 WL 1007427 (N.D. Ga. Mar. 6, 2024).[13]

With the legal standard ironed out, the Court now applies § 3582(c)(1)(A), informed by the Commission's policy statement in § 1B1.13(b)(6), to Harper's case.

## III.   Discussion

Harper moves for a sentence reduction arguing that two extraordinary and compelling reasons justify a reduction: his unusually long sentence, and "other reasons." Because the Court finds that the unusually long sentence provision provides a basis for a sentence reduction, it will not address Harper's alternative argument under (b)(5).

### A.   Unusually long sentence

The text of 1B1.13 (b)(6) bears repeating: "If a defendant received an *unusually long sentence* and has *served at least 10 years* of the term of imprisonment, *a change in the law . . . may be considered* in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a *gross disparity* between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." (emphasis

---

[13]   Undersigned commends the Assistant U.S. Attorney for bringing this decision to the Court's attention even though full briefing and oral argument had already passed.

added). In Harper's words, this provision provides that extraordinary and compelling reasons arise where (1) a defendant is serving an usually long sentence, (2) the defendant has served at least ten years of that sentence, and (3) an intervening change in law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.[14] The Court will address each clause in turn.

### 1. Harper's sentence is unusually long and he has served at least 10 years of his sentence.

Harper's sentence is objectively long. 87 years is, for the majority of people, a literal and figurative lifetime. At oral argument, the government took the position that the sentence was not *unusually* long because it was within the guideline range at the time. Its argument is not illogical. The term "unusually" necessarily requires a comparator—unusual as compared to what? As far as this Court is aware, the Commission did not specify. However, the Commission did note the following statistic: "[D]ata show that between fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer."[15] The Court, therefore, assumes that the

---

[14]   ECF 264, at 9.

[15]   U.S. Sent'g Comm'n, Amendments to the Sent'g Guidelines 60 (2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf (last visited March 10, 2024).

comparator set is "all offenders," not just those offenders convicted under the same statute as Harper. Additionally, if the Commission meant "unusually" as compared to other defendants sentenced under the same statute, that would undermine the purpose of the policy: If a sentence was within the guideline range at the time, then it would not be unusual regardless of any change in law, and only defendants who received sentences above the guideline range could seek relief under (b)(6). Neither the government nor the Court is aware of any authority or guidance suggesting that this is the operative measure of whether a sentence is unusually long. The Court, considering the 87-year sentence before it, declines to take that position for the first time today.

Second, Harper has served at least ten years of that sentence. In fact, he has served closer to twenty. So, the two conditions precedent have been met and the Court can now consider whether a change in law presents an extraordinary and compelling reason to reduce Harper's sentence, but only if the change would cause a gross disparity between the sentence initially imposed and the sentence that would be imposed today.

### 2. The change to § 924(c) would cause a gross disparity between Harper's initial sentence and the sentence he would receive today.

The Court considers the change in law at issue here because it does create a gross disparity between Harper's initial sentence and would-be sentence today.

Congress amended § 924(c) in § 403 of the FSA to prohibit "stacking" of § 924(c) charges arising from the same crime. It did not make this amendment retroactive. For Harper, this means that the then-mandatory double 25-year consecutive sentences he received for his second and third § 924(c) convictions could not be imposed today.

The amendment certainly results in a gross disparity between Harper's initial sentence of 87 years, and what he would likely be sentenced to today—at least 50 years less. The Court need only consult the amended statute to make this determination since the gross disparity can arise without comparison to precise sentence calculations. A 50-year difference is an undeniably gross disparity. So, having concluded that all clauses of § 1B1.12(b)(6) cut in favor of Harper, his unusually long sentence combined with the change in law provides a legal basis for this Court to reduce his sentence.

## B.    Section 3553(a) analysis

Having concluded that Harper is entitled to a reduction, the second step under § 3582(c)(1)(a) asks how much time should be taken off his sentence. The Court turns to the § 3553(a) factors. While a "district court need not exhaustively analyze" each § 3553(a) factor or articulate its findings in great detail, "it must provide enough analysis that meaningful appellate review of the factors' application can take place." *United States v. Cook*, 998 F.3d 1180, 1184–85 (11th Cir.

2021). The Court is not required to expressly discuss all mitigating evidence or every § 3553(a) factor. *United States v. Villa*, No. 22-10359, 2022 WL 3018238, at *1 (11th Cir. July 29, 2022). Instead, "an acknowledgement by the court that it has considered the § 3553(a) factors and the parties' arguments is ordinarily sufficient." *Id.* (citing *United States v. Tinker*, 14 F.4th 1234, 1241 (11th Cir. 2021)). Moreover, the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court. *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016).

Harper asks the Court to consider his exemplary rehabilitation, strong family support system, ███████████████████████████████ ████████████████ and his non-dangerous nature as reasons this Court should impose a sentence of time served under § 3553(a).

As an initial matter, while the Court is not resentencing Harper *per se*, it nonetheless finds his current guideline range both a logical and helpful place to start. A defendant's current guideline range is particularly germane where a Court grants a reduction under (b)(6) as here because the entire purpose of this provision is to correct for draconian sentencing laws which have since been revised. If sentenced today, Harper would face a mandatory minimum of 36 years and the guidelines would recommend that Harper be sentenced to between 432 months

(36 years) and life.[16] ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ To date, Harper has already served nearly 20 years in prison.

With that benchmark in mind, the Court looks to the § 3553(a) factors and Harper makes this an easy case. First, Harper does not shy away from taking responsibility for the severity of his crimes. In his statement during the hearing before undersigned, he expressed remorse and noted that he has reflected on his unfortunate decisions every day of the twenty years he has spent in prison, recognizing the threat he posed during his robberies. Without discounting the seriousness of Harper committing armed robberies, it is worth noting that no one was injured and no shots were fired. Moreover, during his twenty year sentence Harper has worked hard to rehabilitate himself. He has taken educational courses

---

[16] ECF 285. This revised Presentence Report was prepared by the U.S. Probation Office at the request of the Court in consideration of Defendant Harper's motion for a reduced sentence. It does not account for any potential objections by the parties and is being utilized solely for the purpose of orienting the Court to an approximate starting point for determining an appropriate sentence reduction.

[17] ECF 255.

in prison, utilized the prison's psychological services, and worked to fortify his mental health in order to thrive upon release.[18] Harper also has a stable support system ready to care for him after his period of incarceration. He plans to work for his brother-in-law and live with his mother, both of whom attended the hearing on the instant motion. In fact Harper's mother personally addressed the Court during the hearing and confirmed that she was ready and willing to provide support for Harper if released. Additionally, no information has been presented to this Court, nor the does government argue, that Harper presents a danger to the community if released today. In fact, by all accounts, the circumstances that led Harper to commit the bank robberies at the time no longer exist today.

Finally, the Court notes that it has already analyzed the last § 3553(a) factor, which requires a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Cook*, 998 F.3d at 1185 ("[Defendant's] third [extraordinary and compelling] reason is that he is now serving a disproportionately long sentence which, if true, invokes the penultimate factor in § 3553(a)."). As discussed above, the change to § 924(c) creates massive disparities

---

[18]   The Commission was clear that a defendant's rehabilitation alone is not an extraordinary and compelling reason to reduce a sentence. But nothing prevents courts from considering rehabilitation as one of many factors under the § 3553(a) analysis.

between Harper's 87-year sentence and sentences for those convicted today for the same crimes.

In sum, the Court has considered all § 3553(a) factors and concludes that a sentence of time served is reasonable under the circumstances and complies with the objectives of § 3553(a).

## IV.   Conclusion

The Court **GRANTS** Harper's motion and reduces his sentence to **TIME SERVED**. Upon release, Harper shall immediately commence his five-year term of supervised release under the conditions originally imposed in his Judgment and Commitment Order, entered February 6, 2006 [ECF 154]. If either party would like a modification to Harper's supervised release conditions, they may file an appropriate motion with the Court after consulting with Harper's assigned probation officer.

The Court further **DENIES** the government's oral motion, made at the conclusion of argument, to stay execution of Harper's release pending appeal. However, the Court's Order is **STAYED** for 14 days. This will allow the government sufficient time to appeal this Order and seek an emergency stay from the Eleventh Circuit if it so chooses. This 14-day stay will further allow the Federal Bureau of Prisons and U.S. Probation Office to effectuate Harper's orderly transition back into the community.

It is **ORDERED** that the Federal Bureau of Prisons release Harper from its custody 14 days from this Order. The Clerk of Court is **DIRECTED** to serve copies of this Order on the Federal Bureau of Prisons, United States Marshal, and U.S. Probation Office.

**SO ORDERED** this 11th day of March, 2024.

_____
Steven D. Grimberg
United States District Judge